UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JONTELE SWANSON-DEVILL                     Case No. 2:22-cv-228
GOODWIN, #713742,

                      Plaintiff,            Hon. Hala Y. Jarbou
                                            Chief U.S. District Judge
        v.

UNKNOWN DOUGLASS and
UNKNOWN CLEGG,

                      Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.      Introduction

        This Report and Recommendation (R. & R.) addresses Defendant Douglass's

motion for summary judgment based on Plaintiff's failure to exhaust his

administrative remedies.  (ECF No. 17.)

        Plaintiff — state prisoner Jontele Swanson-Devill Goodwin — filed suit

pursuant to 42 U.S.C. § 1983 on December 8, 2022.  Goodwin is incarcerated at the

Kinross Correctional Facility (KCF) in Kincheloe, Michigan.   In his verified

complaint, Goodwin asserts that Defendant Corrections Officers (COs) Clegg and

Douglass retaliated against him in violation of his First Amendment rights.  (ECF

No. 1, PageID.5.)  More specifically, Goodwin alleges that after he asked Defendant

Corrections Officer (CO) Clegg to stop harassing him during a pat-down search, CO

Clegg planted contraband on Goodwin's person and instructed Defendant CO Douglass to file a false misconduct ticket against him. (*Id.*, PageID.3-5.)

Defendant Douglass now moves for summary judgment, asserting that Goodwin did not properly exhaust his administrative remedies. (ECF No. 17.) More specifically, Douglass argues that Goodwin asserted retaliation against CO Clegg during the misconduct hearing process, but that he did not assert retaliation against CO Douglass. (ECF No. 18, PageID.72.) Goodwin did not respond. However, Goodwin's complaint included a copy of a written statement made for his misconduct hearing and referenced in his misconduct appeal. (ECF No. 1-1, PageID.10-11, 15.) In that statement, Goodwin asserted that CO Clegg directed CO Douglass to issue the false misconduct ticket against Goodwin in order to retaliate against him. (*Id.*)

The undersigned respectfully recommends that the Court deny Defendant Douglass's motion for summary judgment. Goodwin's misconduct hearing packet and appeal demonstrate that he raised his retaliation claims throughout the misconduct hearing process. Defendant Douglass has therefore failed to meet his summary judgment burden.

## II.    Factual Allegations

Goodwin says that after breakfast on August 16, 2022, CO Douglass patted him down and determined that there was nothing on his person. (ECF No. 1, PageID.3-4.) But then Goodwin says that CO Clegg approached, asserting that Goodwin "must have something." (*Id.*, PageID.3.) Goodwin asked Clegg to stop harassing him, to which Clegg allegedly responded: "I'll show you what harassment

is." (*Id.*) Goodwin says that CO Clegg then planted a bag of orange juice on Goodwin, and directed CO Douglass to issue a false, retaliatory misconduct ticket against Goodwin. (*Id.*, PageID.4.)

Goodwin says that he filed grievances regarding the retaliation, but that the grievances were rejected as pertaining to non-grievable issues. (ECF No. 1, PageID.2.) He says that he also pursued his retaliation claims through the misconduct hearing process. (*Id.*) Goodwin was initially found guilty of the misconduct ticket but was found not guilty on appeal. (*Id.*, PageID.4-5.)

## III.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

---

[1]    If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

## IV.    Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration.  *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent.  *Id.* at ¶ W.  The Policy Directive also provides the following directions for completing grievance forms:

6

"The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative

remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.  For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct,  the inmate must raise the issue during the initial misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he must then submit a Request for Rehearing raising the retaliation issue. *Id.*, 652 F.3d at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal process).  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *R. & R. adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## V.    Analysis

Goodwin's complaint asserts two, straight-forward First Amendment claims: (1) a retaliation claim against CO Clegg for planting contraband on Goodwin's person and directing CO Douglass to issue a false misconduct ticket, and (2) a retaliation claim against CO Douglass for issuing the false misconduct ticket. Because both claims involve the issuance of an allegedly retaliatory misconduct ticket, the

---

[2]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

misconduct hearing process was the proper administrative remedy for Goodwin to pursue in order to exhaust his claims.[3]  *Siggers*, 652 F.3d at 693-94.

CO Douglass argues that Goodwin "never put CO Douglass on notice as to his claims [sic] against the officer, so he therefore did not exhaust his claims [sic] against the officer."  (ECF No. 18, PageID.73.)  But Goodwin submitted the following written statement for his misconduct hearing:

> Verified statement of Jontel Goodwin #713742 for a class 2 Possession of stolen property; Theft misconduct August 16, 2022.
>
> I Jontel Goodwin #713742, swear under the penalty of perjury to the following facts:
>
> 1)  While at breakfast on 8/16/22 at 06:36, C/O Douglass patted me down, as I was getting patted down nothing was found on my person and I was told I could leave.
>
> 2)  Sergeant Clegg came outside and stopped me from walking away, he told C/O Douglass to take my ID for having orange juice. Douglass stated to Clegg "there was nothing found on him when I patted him down." Clegg replied "he has to have juice on him." I stated, "sir I don't know why I have become your target but your co-worker just told you I don't have anything on me I would appreciate you leaving me alone and stop harassing me." Clegg stated, "I'll show you what harassment is." Clegg looked around the outside door and than looked into the trash bin and found a bag of juice, he than yelled at me to retrieve it out of the trash bin. I said "no because that's not mine." Douglass also stated, "I did not see him put anything in the trash bin I followed him right out." Clegg said "no its his juice." Clegg told me he was writing me a ticket and told me to leave.

---

[3]    The only exception is when the MDOC waives enforcement of its procedural rules and allows a prisoner to pursue retaliatory misconduct claims through the grievance process.  *Reed-Bey*, 603 F.3d at 325; *Colvin v. Washington*, No. 2:18-CV-150, 2019 WL 8138042, at *5 (W.D. Mich. Nov. 26, 2019) (finding that a prisoner successfully exhausted his misconduct-related retaliation claim via the grievance process where his grievance was denied on the merits at all steps), *R. & R. adopted*, No. 2:18-CV-150, 2020 WL 1043862 (W.D. Mich. Mar. 4, 2020).  But Goodwin concedes in his complaint that the grievances he filed regarding his claims were rejected as pertaining to non-grievable issues.  (ECF No. 1, PageID.2.)

3)    If and when the camera is watched, the viewer will see that C/O Clegg went outside where I and C/O Douglass were at and C/O Clagg found the orange juice in the trash bin, C/O Clegg took control of the whole situation although I was told I could leave before C/O Clegg came outside because nothing was found on me. The ticket should have been written in the reporting staff members name which would have been C/O Clegg not C/O Douglass.  C/O Clegg had the misconduct fabricated.  Nothing in the document that was wrote will show the same on camera which also will prove that the misconduct was wrote all in disregard for the truth.

4)    Furthermore, C/O Douglass did not see me throw away a bag of orange juice nor see me with it in my possession,  This falsified document was written out of retaliation by C/O Clegg because I asked him to stop harassing me and he then planted a bag of orange juice on me that he found in the trash bin.  Sergeant Clegg told C/O Douglass to write the ticket as if he was the one who found the juice, so that he could hear me on the ticket.

5)    On 8/18/22 at around or about 11:30 p.m. I was called out to the control center to get reviewed on a ticket for POSSESSION OF STOLEN PROPERTY; THEFT.  I was reviewed by Sergeant Clegg, the C/O who actually went into the trash bin and found some orange juice.  As I was getting heard Sergeant Clegg stated to me you now know what harassment is, I asked what is that supposed to mean.  Clegg said to me it would be in my best interest to plead guilty, I plead not guilty and Clegg asked me "why am I not pleading guilty?"  I stated, "because this is a lie, I would like to leave and fight the ticket."  Clegg stated, "I would not win and I was better off pleading guilty in his presence."  I than left to go back to my unit.

I swear under the penalty of perjury pursuant to 28 U.S.L. 1746 that the foregoing is true and correct to the best of my knowledge.

Executed on August 18, 2022

Jontel Goodwin #713742
Kinross Corr. Facility
4533 W. Industrial Park
Kincheloe, MI 49788

CC: Personal File
    Hearing Officer

(ECF No. 1-1, PageID.10-11; ECF No. 18-5, PageID.112-113.)  And after he was found guilty of the charge, Goodwin appealed, stating:

| Prisoner's Number 713742 | Name GOODWIN | | Block/Unit Number C | Cell/Room Number C-01-018 | Date of Incident 8/16/22 |
| Date of Hearing 8/22/22 | Misconduct Class: ☑ II ☐ III  Charge(s) STOLEN PROPERTY THEFT | | | Sentence Five days LOP | |

BRIEFLY DESCRIBE THE BASIS OF YOUR APPEAL:

Out of retaliation I was written a misconduct for theft, because of a prior incident and disagreemt with C/o Clegg. The following did occur, b and c, were violated and a rehearing should be ordered. Prisoner Goodwin due process was violated by hearing officer Esslin. Prisoner Goodwin submitted a two page verified statement explaining retaliation and that the charge wwas falsified. The hearing officer violated policy, administrative rules and hearings handbook rules set out for hearings by not acknowledging the verified statement in the record and falsifying prisoners statement. Prisoner never made a statement verbally other than "I'm submitting on record this two page verified statement." The decision of the hearing officer is not supported by evidence on the record K. Esslin stated to me she could not see me on camera thrwoing anything away in the trash bin outside the chow hall. K. Esslin decision was not based on facts. **RESOLUTION:** Issue a rehearing pursuant to policy. Investigate and hold accountable according to policy the hearings officer for violating prisoner Goodwin's due process and falsifying prisoner statement.

(do not write below this line)

(ECF No. 1-1, PageID.15.)

In the undersigned's opinion, Goodwin clearly raised his retaliation claims against CO Clegg and CO Douglass during the hearing and appeal on the August 16, 2022, misconduct ticket.

## VI.    Recommendation

The undersigned respectfully recommends that the Court deny Defendant Douglass's motion for summary judgment (ECF No. 17).   Goodwin's misconduct hearing packet and appeal demonstrate that he raised his retaliation claims throughout the misconduct hearing process.  Defendant Douglass has therefore failed to meet his summary judgment burden.

If the Court accepts this recommendation, Goodwin's First Amendment retaliation claims against CO Clegg and CO Douglass will remain.

Dated:  March 1, 2024                              /s/ *Maarten Vermaat*
                                                                  MAARTEN VERMAAT
                                                                  U. S. MAGISTRATE JUDGE

12

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).