UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JONTELE GOODWIN,

    Plaintiff,

v.

UNKNOWN DOUGLASS, et al.,

    Defendants.

_____/

Case No. 2:22-cv-228

Hon. Hala Y. Jarbou

## **OPINION**

On January 8, 2025, the magistrate judge entered a report and recommendation ("R&R," ECF No. 64) recommending that the Court deny Defendants' motion for summary judgment (ECF No. 44) and Plaintiff's cross-motion for partial summary judgment (ECF No. 49), as well as his motion for a temporary restraining order and preliminary injunction (ECF No. 47), and that Defendants' motion to strike a surreply filed by Plaintiff without leave of the Court (ECF No. 61) be granted.  Defendants timely raised six objections to the recommended denial of their summary judgment motion, four of which contend that certain crucial pieces of video evidence establish beyond dispute that Plaintiff's retaliation claim fails, and two of which accuse the magistrate judge of misapplying relevant precedents.  (Defs.' Objs., ECF No. 65.)[1]

The Court reviews the magistrate judge's determinations de novo, Fed. R. Civ. P. 72(b)(3), and finds that nearly all the Defendants' objections are without merit.  Defendants' video evidence does not conclusively settle whether Plaintiff's misconduct citation was appropriately issued, and the Court declines their invitation to extend the scope of the *Nieves* line of cases beyond prosecutions and arrests to prison disciplinary actions.  But Defendants' first, second, and fourth

---

[1] Plaintiff did not file any objections within the time required.  Consequently, the Court adopts the R&R's denial of Plaintiff's motion for a TRO and a preliminary injunction and his summary judgment motion in full.

objections are sustained, in part, because the Court finds the record sufficiently clear to identify Plaintiff and one Defendant in some of the video recordings and determine the identity of the object Defendants accuse Plaintiff of stealing from the cafeteria. The Court adopts the R&R in all other respects.

Objections 1–4: Outdoor and Indoor Video Recordings

Defendants' first objection is a non sequitur. The magistrate judge found that two recordings of the outside of the cafeteria where Defendant Keith Clegg found a discarded container of orange juice in a trash can do not provide "enough detail to determine who searched for the juice in the trash and when." (R&R 22.) Defendants respond to this finding by contending that other evidence—Plaintiff's signed statement appended to his complaint[2] and Clegg's affidavit in support of Defendants' summary judgment motion—shows that it is undisputed that Clegg found the juice in the trash around the time that Plaintiff was detained and written up for misconduct. (Defs.' Objs. 2–3.)

But the magistrate judge did not conclude that those facts were in controversy. The magistrate's finding was that, contrary to Defendants' assertion that the recordings "firmly corroborated" their version of events (Defs.' Objs. 14), "there is not enough detail [in the videos] to determine who searched for the juice bag in the trash and when." (R&R 22.) Reliance on a video recording at summary judgment is inappropriate when "the video does not tell the whole story in a material respect, or 'reasonable jurors could interpret the video evidence differently.'" *Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018) (quoting *Green v. Throckmorton*, 681 F.3d 853, 865 (6th Cir. 2012)). Defendants effectively concede that their video

---

[2] Plaintiff explicitly stated that "C/O Clegg went outside where I and C/O Douglass were at and . . . found the orange juice in the trash bin" in the signed statement. (*See* Compl., Ex. 1, ECF No. 1-1, PageID.10.)

evidence is insufficient to identify Clegg by relying on the parties' sworn statements to explain the recordings. The magistrate was therefore right to conclude that the videos do not establish beyond dispute that Clegg inspected the trash can and retrieved a bag of orange juice bag from it, and Defendants' objections to that finding are overruled. Yet the Court agrees that Clegg's undertaking of those acts is not controverted by the parties, so it grants summary judgment on the specific issue of Clegg's search of the trash bin.

In a similar key, Defendants' fourth objection responds to the magistrate judge's finding that "[i]t is not clear . . . what Clegg is carrying" in the recording purportedly depicting him bringing the container of contraband juice into the cafeteria for photographing and logging. They point to the parties' agreement that what Clegg took out of the trash can and carried into the cafeteria was a bag of orange juice. (Defs.' Objs. 7.) The Court finds no fault in the magistrate judge's characterization of the recording and overrules the fourth objection accordingly. Nevertheless, since there is no real dispute about what Clegg carried into the cafeteria (*see* Compl., Ex. 1, ECF No. 1-1, PageID.10), the Court grants summary judgment on that fact alone.

In their second objection, Defendants contend that it was error to find that there is a live dispute over whether Plaintiff is captured by the recording of the cafeteria exterior that Defendants assert shows Plaintiff disposing of the bag of juice in a trash bin just beyond the cafeteria's doors. (Defs.' Objs. 3.) They first argue that Plaintiff, who is proceeding pro se in this litigation, waived a challenge to his identification as the person shown in the video. While it is true that Plaintiff does not explicitly state that he is not depicted in the video, a solicitous reading of Plaintiff's opposition brief—solicitude this Court is required to give, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972)—encompasses that argument. Plaintiff contends in his brief that the "actual camera footage" is too unclear "to show Plaintiff throwing away the juice . . . outside the chow hall." (Pl.'s

Opp. to Mot. for Summ. J. 3, ECF No. 55.)  The Court interprets that position to include a denial that the recording shows Plaintiff at all and declines to adopt Defendants' waiver argument.

More convincingly, Defendants point out that Plaintiff is the only person who could have been recorded undergoing a search at 6:36 a.m., exactly when the external recording of the cafeteria shows someone being patted down near the cafeteria doors.  While the recording is too grainy to permit identification of the precise movements of the people depicted, it clearly shows only one person leaving the cafeteria being pulled aside by another person, made to stand still, and then walked over by a larger group of people to a receptacle.  Plaintiff himself alleges he was searched at 6:36 a.m. (*see* Compl. ¶ 11, ECF No. 1), and he has not claimed that the recording timestamps are incorrect.  Because nothing in the record indicates that more than one person was searched leaving the cafeteria at 6:36 a.m. on the day of Plaintiff's interaction with Defendants, the recording must depict Plaintiff's search, which places the identity of the person being searched beyond factual dispute.   But this does not establish conclusively that the "*single* inmate . . . detained and patted down immediately outside the cafeteria . . . discarded an object in the trashcan." (Defs.' Objs. 5.)  The recording is far too pixelated to permit only one reasonable interpretation of Plaintiff's behavior just before he was searched.  Consequently, Defendants' second objection is sustained as to the identification of Plaintiff as the person whose search is recorded in the external recording of the cafeteria and is overruled in all other respects.

Defendants' third objection accuses the magistrate judge of indulging in "visible fiction" by finding that another incarcerated person, Anthony Roberts, could have seen whether Plaintiff disposed of contraband juice while leaving the cafeteria. (*Id.*)  According to Defendants, the external recording "clearly shows that, during the precise timeframe when Plaintiff discards an

4

object in the trash can . . . , Roberts is plainly depicted with his back turned, facing away from Plaintiff." (*Id.* (emphasis omitted).)

The Court does not share Defendants' certainty. The video is recorded from too great a distance to permit any categorical statements about the positioning of Roberts relative to Plaintiff and the direction in which the former was looking. It is perfectly possible that Roberts's head was turned in Plaintiff's direction as Roberts walked by him, especially since Roberts made an abrupt right turn to walk past Plaintiff again the moment that Plaintiff appears to have been ordered by defendant Austin Douglass to submit to a pat-down search. (Defs.' Mot. for Summary J., Ex. J, 6:36:29, ECF No. 45-11.) It is also plausible that Roberts saw Plaintiff walking past the trash can out of his peripheral vision; Plaintiff appears to have been standing somewhat to the right of Roberts and not "directly behind" him, contrary to Defendants' characterization of the recording. (Defs.' Objs. 6.) Simply put, what the recordings say about the accuracy of Roberts's affidavit cannot be resolved on "axiom[s]" alone: it requires selection between several potential interpretations of the recording's content that is inappropriate at summary judgment. *See Oakley v. Dolan*, No. 21-2939, 2023 WL 3263618, at *3 (2d Cir. May 5, 2023) (acknowledging that video recordings are subject to physical limitations because of lighting, distance, and other factors); *Land v. Ruloff*, No. 22-cv-12672, 2025 WL 51959, at *3 (E.D. Mich. Jan. 8, 2025) (denying summary judgment motion relying on video recording "not nearly clear enough to conclusively reveal" the bulge of a firearm in the plaintiff's pocket). Consequently, Defendants' third objection is overruled.

Objection 5: Applying *Nieves* to Prison Retaliation Claims

Changing tack, Defendants also raise a pair of legal objections to the magistrate judge's alleged failure to follow Supreme Court precedent. Both objections are misplaced.

5

Defendants first object that the magistrate judge erred by not extending the rule of *Nieves v. Bartlett*, 587 U.S. 391 (2019), which requires a retaliatory-arrest claimant to show that the arresting officer lacked probable cause, to retaliation claims based on the issuance of a prison-misconduct citation. 587 U.S. at 399. Defendants present three reasons for applying *Nieves* to misconduct retaliation claims, none of which is persuasive.

To begin, Defendants argue the magistrate wrongly found that a showing of the absence of probable cause for misconduct retaliation claims has not been imposed by the Sixth Circuit or any other court of appeals. To rebut the magistrate's finding, Defendants cite *Taylor v. Williams*, No. 1:12-cv-281, 2012 WL 6201208 (W.D. Mich. Dec. 12, 2012), an unpublished opinion by this Court issued seven years before *Nieves* was handed down. But since a district court's opinion is not binding precedent, even as to its own future decisions,[3] Defendants' reliance on *Taylor* is ill-considered. (Defs.' Objs. 9.)

Next, Defendants argue that it is illogical to impose a "higher burden" on retaliatory-arrest and retaliatory-prosecution claimants than the one to which retaliatory-misconduct claimants are subject: according to Defendants, this would result in the same enforcement action being evaluated according to different standards depending on whether it occurred within prison walls, and it would also lead to the paradoxical result that incarcerated persons, whose constitutional rights can be restricted to the extent necessary to advance legitimate penological interests, would have an easier time asserting a retaliation claim than arrestees. (*Id.* at 9–10.)

The Court fails to see the illogic here. There is an obvious justification for requiring probable cause in one context but not the other: probable cause is necessary for an arrest to be

---

[3] "District Court opinions have persuasive value only and are not binding as a matter of law." *Liebisch v. Sec'y of Health & Hum. Servs.*, 21 F.3d 428 (6th Cir. 1994) (unpublished table decision).

lawful under the Fourth Amendment, *see, e.g.*, *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000), but has no bearing on the validity of a prison misconduct citation. Absence of probable cause for an arrest that is claimed to be retaliatory "generally provide[s] weighty evidence that the officer's animus caused the arrest," because it implies that the arresting officer had no legitimate reason for arresting the retaliation claimant. *Nieves*, 587 U.S. at 401. Proving that an arrest lacked probable cause can thus serve as a proxy for establishing the causal connection between the government official's improper motive and the claimant's injury necessary to state a retaliation claim under the First Amendment.

The same is not true for retaliatory misconduct claims. As the magistrate correctly pointed out, probable cause plays no role in evaluating the validity of a prison misconduct citation. This Court is unaware of any precedent holding that the Fourth Amendment or another constitutional provision requires a corrections officer to have probable cause before issuing a misconduct. Grafting a probable-cause inquiry onto retaliation claims by prisoners would further complicate analysis of the causal relationship between motive and injury at the heart of a First Amendment retaliation claim, not simplify it.

Because Defendants misunderstand the *Nieves* rule as creating a higher bar for retaliation claims by those subjected to criminal process instead of as a mechanism for identifying retaliatory motive, they discern a paradox in the supposedly more generous treatment of prisoners when there is none. The Supreme Court originally applied the probable-cause requirement to retaliatory-prosecution claims because it anticipated that "a requirement to plead and prove [probable cause's] absence will usually be cost free by any incremental reckoning." *Hartman v. Moore*, 547 U.S. 250, 265 (2006). In extending the requirement to retaliatory-arrest claims, the Court reiterated the rationale that evidence about whether an arresting officer had probable cause will "be available in

7

virtually every retaliatory arrest case." *Nieves*, 587 U.S. at 401 (quoting *Reichle v. Howards*, 566 U.S. 658, 668 (2012)). Not requiring the recipient of a prison-misconduct citation to establish the absence of probable cause does not mean that the prisoner occupies a privileged constitutional position relative to their arrested counterpart. The burden of establishing causation is the same inside and outside the prison walls; what differs is the availability of "a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation." *Hartman*, 547 U.S. at 261.

Even if the *Nieves* rule is considered an additional burden, that alone is no reason to extend it to prisoners. Limitations on incarcerated persons' First Amendment rights are acceptable only to the extent implied by their status as prisoners and as necessary to advance legitimate penological interests. *Thaddeus-X v. Blatter*, 175 F.3d 378, 390 (6th Cir. 1999) (en banc). Nowhere do Defendants argue that requiring prisoners to show the absence of probable cause before raising prison-misconduct retaliation claims in the courts is a restriction inherent to a claimant's status as a prisoner or that imposing that requirement advances any penological interest of MDOC, let alone a legitimate one.

Finally, Defendants take issue with the magistrate judge's reference to *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), in which the Sixth Circuit held that a prisoner who actually committed the violation that resulted in their misconduct citation does not on that basis alone lose the ability to claim that the citation was retaliatory. *Id.* at 263. Defendants appear to understand the magistrate judge's citation of *Maben* to imply a greater-includes-the-lesser argument: the absence of probable cause cannot be a requirement for a prisoner to have a viable retaliation claim based on a misconduct citation if actual guilt does not nullify such a claim. (Defs.' Objs. 10 n.2.)

8

Because the Court finds that the *Nieves* rule is inapplicable to prison misconduct citations on its own terms, it need not opine whether *Maben* is reconcilable with *Nieves*.

None of Defendants' justifications for requiring misconduct retaliation claimants to show that the citing officer lacked probable cause are persuasive. The Court instead adheres to the long line of decisions in this circuit applying the three-part test for retaliation claims, a framework that the Sixth Circuit has not suggested is in need of revisiting.[4] Defendants' fifth objection is therefore overruled.

Objection 6: Qualified Immunity

Defendants' sixth objection advances their fifth objection in a somewhat different form. Assuming that their version of the facts is the true one, Defendants contend that they are entitled to qualified immunity under the second prong of the test established by *Saucier v. Katz*, 533 U.S. 194 (2001), according to which officers' qualified immunity against suits alleging the violation of a constitutional right can only be overcome if the asserted right was clearly established when the complained-of conduct occurred. *Id.* at 201. Because the impact of *Nieves* on retaliatory-misconduct claims is uncertain, Defendants argue, Plaintiff's right to assert such a claim when there was probable cause for the misconduct citation is not clearly established, so Defendants' qualified-immunity defense is not overcome.

This reasoning suffers from two defects. First, in passing on a motion for summary judgment, the Court cannot resolve genuine disputes of material fact. Here, there is a genuine dispute over whether Plaintiff surreptitiously deposited orange juice into a container in order to smuggle it out of the prison cafeteria, whether Plaintiff disposed of the bag of juice in a trash can

---

[4] The Sixth Circuit decided at least one case involving a misconduct retaliation claim after *Nieves* was handed down. *Briggs v. Westcomb*, 801 F. App'x 956 (6th Cir. 2020). *Nieves* is not cited once.

9

just outside the cafeteria before he was searched, and whether Plaintiff's affiant Anthony Roberts could have seen Plaintiff get rid of the bag. Resolving these disputes in Plaintiff's favor, as the Court must for a nonmovant on summary judgment seeking to overcome a claim of qualified immunity, *see Bays v. Montmorency County*, 874 F.3d 264, 268 (6th Cir. 2017), there would be no basis for finding that Defendants had any legitimate reason for issuing a misconduct citation to him, let alone probable cause (whatever that standard would mean in this context). If Plaintiff's version of events is the right one—and the Court intimates no view on whether it is—then *Nieves*'s impact on Plaintiff's right to raise a First Amendment retaliation claim would be unambiguously nil. Defendants cannot bake in their version of events into the definition of the right Plaintiff asserts in order to support their claim of qualified immunity.

Second, Defendants do not make a convincing case for why *Nieves* unsettles precedents clearly establishing that retaliation by way of a misconduct citation is constitutionally impermissible, as well as the analytical framework through which a misconduct claim is to be evaluated. Defendants point to the *absence* of any cases explicitly denying that the *Nieves* rule applies to prison misconduct citations as implying that it was at least uncertain whether probable cause acted as a complete defense to a retaliation claim. That absence could also be read another way: no court deciding a prison retaliation claim since *Nieves* was handed down has considered the case relevant enough to even discuss it. Defendants' reliance on *Reichle* to support this position is misplaced given that the case resolved a split between the Sixth and Tenth Circuits about the applicability of the probable-cause requirement established for retaliatory prosecutions in *Hartman v. Moore*, 547 U.S. 250 (2006), to retaliatory arrests. For it to be "arguable that *Hartman*'s rule" also applies to retaliatory misconduct citations, *Reichle v. Howards*, 566 U.S. 658, 669 (2012), a court must make that connection. Defendants cannot set up an unsupported assumption that *Nieves*

10

applies to retaliatory misconduct citations and then invoke silence as proof that the case's applicability is debatable. That is not how precedent works.[5]

An incarcerated person's right to be free from retaliation in the form of a misconduct citation because of their exercise of their First Amendment rights has been clearly established in the Sixth Circuit since its decision in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). The Sixth Circuit held that the right to be free from retaliation for filing a grievance claim was clearly established in 2018. *Maben*, 887 F.3d 252. Here, Plaintiff filed a formal grievance because of the alleged retaliatory conduct rather than the grievance causing the retaliation. Plaintiff alleges that the misconduct was issued after he told Defendants to stop harassing him. (R&R 4.) While verbal remonstration against harassment is not exactly the same as filing a formal grievance, it is clearly established in the Sixth Circuit that a prisoner's oral complaint cannot serve as the basis for retaliation any more than its more formal counterpart. In *Maben*, the court held that inmates have the "right to file 'non-frivolous' grievances against prison officials on [their] own behalf, whether written or oral." 887 F.3d at 265. Other courts of appeals agree. *See id.* (first citing *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016); then citing *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006)). A reasonable officer would know that to file a false misconduct because of a prisoner's verbal complaint about harassment amounts to unconstitutional retaliation. Defendants cannot point to a precedent or principle that casts doubt on an inmate's right to be free from harassment for exercising their First Amendment rights through an oral petition. Consequently, Plaintiff has satisfied his burden of establishing that the retaliation he alleges he

---

[5] "Questions in a case which were not raised by the parties, not presented to the attention of the court, and not considered by the judges, are not concluded by the decision in that case, and the judgment is not an authority upon such questions . . . ." Black, Handbook on the Law of Judicial Precedents § 10, at 67 (1912).

11

encountered, if proven, would have been a violation of clearly established law. The Court therefore affirms the magistrate judge's rejection of Defendants' qualified-immunity claim.

Other Motions

The R&R also addresses Plaintiff's cross-motion for partial summary judgment (ECF No. 49) and his motion for a temporary restraining order and preliminary injunction (ECF No. 47), as well as Defendants' motion to strike Plaintiff's unpermitted surreply to their summary judgment motion (ECF No. 61). As noted at the beginning of this Opinion, Plaintiff did not object to the magistrate's proposed disposition of his motions, so the Court adopts those recommendations in full and denies both the motion for a TRO and preliminary injunction and the motion for partial summary judgment. The Court also follows the magistrate's proposed course of action as to Defendants' motion to strike and grants the same.

The Court will issue an order consistent with this Opinion.

Dated: February 21, 2025                          /s/ Hala Y. Jarbou
                                                  HALA Y. JARBOU
                                                  CHIEF UNITED STATES DISTRICT JUDGE